# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

***

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WILLIAM MORROW,

    Defendant.

Case No. 2:13–cr–141–JAD–VCF

**SEALED REPORT & RECOMMENDATION**

  This matter involves the United States' prosecution of William Morrow. Before the court is the United States' Motion for Appointment of Counsel (#78, #81[1]). Morrow opposed (#99); and the government replied (#101). The court held hearings on September 17, 2014, September 25, 2014, and October 3, 2014 (#97, #101, #110) and ordered supplemental briefing (#106, #107, #109). For the reasons stated below, the government's Motion for Appointment of Counsel should be denied.

## BACKGROUND

  William Morrow was indicted on April 17, 2013. Morrow retained Mr. Benjamin Nadig, Esq. as defense counsel. Together, Morrow and Mr. Nadig agreed that Morrow should cooperate with the government and testify against his alleged co-conspirators at trial. (Nadig Aff. (#109) at ¶¶ 5–6).

  A year later, the Las Vegas Metropolitan Police Department and U.S. Attorney's Office initiated an investigation into Mr. Nadig. The investigation is ongoing. It concerns Mr. Nadig's representation of another client in another matter that is unrelated to Morrow's prosecution. As a result of the investigation, Mr. Nadig withdrew from representing the other client in the other matter.

  Now, the government moves to disqualify Mr. Nadig in this matter. The government argues that Mr. Nadig's continued representation of Morrow presents a concurrent conflict of interest under Nevada

---

[1] Parenthetical citations refer to the court's docket.

Rule of Professional Conduct 1.7(a)(2), which applies here. *See* LR IA 10-7(a). It also argues that the court should disqualify Mr. Nadig to protect the court's interest in the administration of justice. Both Morrow and Nadig, who is now represented by counsel, oppose the motion. They argue that Morrow has a constitutional right to counsel of his own choosing, that no conflict exists and, even if one did exist, Nadig will be able to "provide competent and diligent representation" to Morrow. *See* NEV. R. PROF'L CONDUCT 1.7(b)(1).

## LEGAL STANDARD

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." U.S. CONST. amend VI. The Sixth Amendment's "root meaning" is the "right to retain counsel of [one's] own choosing. *Kaley v. United States*, 134 S. Ct. 1090, 1102 (2014) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *United States v. Gonzalez–Lopez*, 548 U.S. 140, 147–148 (2006)). The Supreme Court has "held that the wrongful deprivation of choice of counsel is 'structural error,' immune from review for harmlessness, because it 'pervades the entire trial.'" *Kaley*, 134 S. Ct. at 1102 (citing *Gonzalez–Lopez*, 548 U.S. at 150). In Justice Scalia's words:

> Where the right to be assisted by counsel of one's choice is wrongly denied, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation, since the right to select counsel of one's choice is not derived from the Sixth Amendment's purpose of ensuring a fair trial; thus, deprivation of the right is complete when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.

*Gonzalez–Lopez*, 548 U.S. at 148.

However, this right is not absolute. *Id*. at 252; *Wheat*, 486 U.S. at 159. The accused may not retain counsel "who is not a member of the bar." *Wheat*, 486 U.S. at 159. Similarly, the accused has no right to an attorney he cannot afford. *Id*. "Nor may a defendant insist on the counsel of an attorney who

has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government." *Id*. Additionally, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them." *Id*. at 160. Where, as here, the possibility of a conflict of interest exists, trial courts have a duty to inquire in order to protect the integrity of the judicial process and ensure "that their judgments remain intact on appeal." *Wood v. Georgia*, 450 U.S. 261, 272 (1981); *Wheat*, 486 U.S. at 161; *United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006).

## DISCUSSION

The government's motion presents two questions: (1) whether Mr. Nadig's representation of Morrow presents a conflict of interested under the Nevada Rules of Professional Conduct and (2) if so, whether the court can accept Marrow's waiver of the conflict in light of its duty to protect the integrity of the judicial process. Each question is addressed below.

### I.     <u>Whether a Conflict Exists</u>

The government argues that Mr. Nadig's representation of Morrow presents a concurrent conflict of interest under Nevada Rule of Professional Conduct 1.7(a)(2). The rule reads: "A concurrent conflict of interest exists if . . . [t]here is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." NEV. R. PROF'L CONDUCT 1.7(a)(2), *adopted by* LR IA 10-7(a). The government contends that a conflict exists here because Mr. Nadig is being investigated by the same U.S. Attorney's Office that is prosecuting Morrow.

The court agrees that these circumstances present a concurrent conflict of interest. Mr. Nadig argues that no conflict exists because the government's argument is speculative: "the only allegation giving rise to the Government's Motion for Appointment of Counsel is their contention that 'Mr. Nadig is aware that he is under investigation, and there is *some* chance he could be prosecuted federally for this

conduct.'" (Nadig Opp'n (#99) at 5:5–9) (emphasis original).  This is mistaken.  Rule 1.7(a)(2) does not limit conflicts of interest to actual or current conflicts. It expressly provides that a conflict of interest exists if "there is a significant risk" that the lawyer's representation "will" be materially limited by a lawyer's personal interest. NEV. R. PROF'L CONDUCT 1.7(a)(2). This language is prospective and refutes Mr. Nadig's argument. Additionally, at least three Circuit Courts have determined that these circumstances present a conflict of interest. In *Armeienti v. United States*, 234 F.3d 820 (2nd Cir. 2000), *Briguglio v. United States*, 675 F.2d 81 (3rd Cir. 1992), and *United States v. McLain*, 823 F.2d 1457 11th Cir. 1987),[2] the Second, Third, and Eleventh Circuits held that an actual conflict of interest exists where, as here, defense counsel is under investigation by the same U.S. Attorney's Office that is prosecuting defense counsel's client.[3]

Nonetheless, both Nevada Rule of Professional Conduct 1.7(b) and the Sixth Amendment permit Mr. Nadig to represent Morrow under these circumstances. Nevada Rule of Professional Conduct 1.7(b) states that "[n]otwithstanding the existence of a concurrent conflict of interest under paragraph (a)," a lawyer may represent a client if the lawyer "reasonably believes that the lawyer will be able to provide competent and diligent representation" and "each affected client gives informed consent, confirmed in writing." NEV. R. PROF'L CONDUCT 1.7(b).

Mr. Nadig satisfied Rule 1.7(b)'s requirements. On October 2, 2014, he submitted an affidavit explaining why he reasonably believes that he will be able to provide competent and diligent representation to Morrow. (*See* Nadig Aff. #109).  Mr. Nadig believes that he will be able provide Morrow with competent and diligent representation because Mr. Nadig's role in Morrow's trial is *de*

---

[2] McLain was overruled on other grounds by *United States v. Watson*, 866 F.2d 381, 385 (11th Cir. 1989).

[3] Although the Ninth Circuit does not appear to have addressed this situation, in *United States v. Baker*, 256 F.3d 855, 861 (9th Cir. 2001), the court stated that an actual conflict of interest would exist where there is "a link" between an investigation into defense counsel and defense counsel's representation of a criminal client. Because the same U.S. Attorney's Office is investigating Mr. Nadig and prosecuting Morrow, a link exists here.

*minimis*. Mr. Nadig will assist Morrow in testifying against Morrow's alleged co-conspirators and nothing else. Additionally, the agreement to testify on behalf of the government was made months before the government began its investigation into Mr. Nadig.

The government's arguments are also insufficient under the Sixth Amendment. Criminal defendants have "a Sixth Amendment right to conflict-free representation." *Daniels v. Woodford*, 428 F.3d 1181, 1196 (9th Cir. 2005). This right belongs to Morrow—not the government—and it is Morrow's to waive. *Holloway v. United States*, 495 F.2d 835, 837 (10th Cir. 1974) (citing *Miranda v. Arizona*, 384 U.S., 436, 444 (1966)). Accordingly, the government lacks standing to assert Morrow's Sixth Amendment right to conflict-free representation against Morrow's right to counsel of his choosing.

Even if the government had standing to assert this right, it failed to demonstrate that Morrow's Sixth Amendment rights were violated. A criminal defendant's Sixth Amendment right to conflict-free representation is only violated if an actual conflict of interest exists, which adversely affects the lawyer's performance. *United States v. Moore*, 159 F.3d 1154, 1157 (9th Cir. 1998). To demonstrate a violation of the Sixth Amendment right to conflict-free representation, the movant must show (1) that counsel "actively represented conflicting interests, and (2) that the actual conflict adversely affected counsel's performance." *United States v. Baker*, 256 F.3d 855, 860 (9th Cir. 2001) (citing *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir. 1988)). This requires demonstrating "not the mere possibility of conflict" but "a factual showing on the record" of an actual conflict. *Baker*, 256 F.3d at 860 (citations omitted).

For the reasons cited above by Mr. Nadig, the government has failed to demonstrate an actual conflict that has adversely affected Mr. Nadig's performance. At this stage, the government's arguments concern proceedings in the future. It argues that Mr. Nadig should be disqualified because there "is the risk that Mr. Nadig would put his own interests about Morrow's—the risk that Mr. Nagid may not zealously (and effectively) represent Morrow's interests—that gives rise to the conflict of interest."

(Gov't's Reply (#101) at 4:18–20); (*see also* Gov't's Supp. (#104) at 4) (arguing that Mr. Nadig's continued representation of Morrow presents "some chance" that "could" or "may" adversely affect trial). This is insufficient under the Sixth Amendment. *Moore*, 159 F.3d at 1157.

## II.     Whether the Court can Accept Morrow's Waiver

The government's motion presents a second question: whether the court can accept Marrow's waiver of the conflict of interest. After careful deliberation, the court concludes that it can and should accept Morrow's waiver.

A criminal defendant's Sixth Amendment right to counsel of his choosing is not absolute. *Wheat*, 486 U.S. at 159–61; *Gonzalez–Lopez*, 548 U.S. at 151–52. The court must not only protect Morrow's rights; it has a duty to secure fairness in the administration of justice, to protect the integrity of the judicial process, and to ensure that its judgments remain intact on appeal. FED. R. CRIM. P. 2; *Wheat*, 486 U.S. at 159–61 ("[N]o such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice. Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."); *United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006). This means that, under circumstances, the court may reject a criminal defendant's waiver of a conflict of interest. *Gonzalez–Lopez*, 548 U.S. at 151–52 ("Nor may a defendant . . . demand that a court honor his wavier of conflict-free representation.").

To determine whether the court should accept or reject a criminal defendant's waiver of his right to conflict-free representation, the court must carefully balance the defendant's right to be represented by the counsel of his choice against the court's interest in the orderly administration of justice. *Gonzalez–Lopez*, 548 U.S. at 152 (citation omitted). The court has "wide latitude" in making this determination. *Id*.

The rights at issue here present the court with a weighty balancing test. On the one hand, Morrow has a Six Amendment right to Mr. Nadig, the counsel of Morrow's choosing. If the court disqualifies Mr. Nadig, then the court risks creating "'structural error,' immune from review for harmlessness, because it 'pervades the entire trial.'" *Kaley*, 134 S. Ct. at 1102 (citing *Gonzalez–Lopez*, 548 U.S. at 150).

On the other hand, the court must protect its interest in the administration of justice. Normally, this would preclude Mr. Nadig's participation in trial. The Second, Third, and Eleventh Circuits and this court agree that these circumstances present a conflict of interest. *Armeienti*, 234 F.3d at 820; *Briguglio*, 675 F.2d at 81; *McLain*, 823 F.2d at 1457. However, if the court disqualifies Mr. Nadig, new counsel would have to be appointed on the eve of trial. This would result in delay, which would adversely affect the rights of Morrow's co-defendants who are awaiting trial.

Rather than balancing these weighty concerns against one another—which presents the risk of reversible error—the court charts a more pragmatic approach. The government has articulated one non-hypothetical concern that militates in favor of disqualification: "Mr. Nadig's continued representation of Morrow may open the door to questions on cross-examination regarding Morrow's motive for testifying, [including] whether [Morrow] is testifying in a particular way in order to curry favor with the United States on behalf of Mr. Nadig." (Gov't's Supp. (#104) at 4:8–10). The government is concerned that Morrow, its witness, may be impeached because of Mr. Nadig's investigation.

This concern is readily assuaged under Federal Rule of Evidence 403. It states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, the probative value of inquiring into Morrow's motive for

7

testifying—insofar as it concerns the government's investigation into Mr. Nadig—is outweighed by unfair prejudice.

Morrow agreed to testify for the government before the government's investigation into Mr. Nadig began. This eliminates all probative value because Morrow's motive for testifying for the government could not be the result of an attempt "to curry favor with the United States on behalf of Mr. Nadig." At that time, there was no favor to be gained.

If Morrow's co-defendants want to impeach Morrow's testimony, they may inquire into the benefits that Morrow may or may not have received from the government for testifying on the government's behalf. Permitting Morrow's co-defendants to ask the additional question of whether Morrow is testifying "in order to curry favor with the United States on behalf of Mr. Nadig" adds nothing but unfair prejudice. Morrow agreed to testify before the investigation began. Therefore, the court should exclude impeachment questions regarding Mr. Nadig under Rule 403.

This achieves three results. First, it preserves Morrow's Sixth Amendment right to the counsel of his choosing. Second, it avoids causing a delay in trial. Third, it eliminates the one concern underlying the government's Motion for Appointment of Counsel.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that the government's Motion for Appointment of Counsel (#78, #81) be DENIED.

IT IS FURTHER RECOMMENDED that impeachment questions regarding the government's investigation into Mr. Nadig be EXCLUDED.

/// /// ///

/// /// ///

/// /// ///

8

IT IS ORDERED that the parties must SHOW CAUSE why the papers and transcripts of hearings related to this Report & Recommendation—(i.e., #78, #,79, #81, #84, #85, #91, #93, #98, #99, #101, #104, #107, #109, #111)—should not be UNSEALED by Friday, October 10, 2014.

DATED this 3rd day of October, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE