# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>William Morrow,<br><br>    Defendant. | Case No. 2:13-cr-141-JAD-VCF<br><br>**Order Re: Objections to Report and Recommendation to Disqualify Attorney Benjamin Nadig, Esq. from Representing Defendant William Morrow [Doc. 111]** |

Defendants Arquarius Robertson, Cortaz Robertson, and William Morrow are charged with the armed robbery of the Palace Station Casino in Las Vegas, Nevada. Doc. 1. The government has moved to disqualify attorney Benjamin Nadig from representing Morrow, arguing that its investigation of Nadig in connection with an unrelated criminal matter creates an unavoidable conflict of interest that violates Nevada Rule of Professional Conduct 1.7(a) and the Sixth Amendment. Doc. 78. Magistrate Judge Cam Ferenbach issued proposed findings and recommended that the government's motion be denied. Doc. 111. The government now objects. Doc. 122. I find that Morrow has been fully advised of the potential conflict and expressed his desire for Nadig to continue to represent him and that Nadig has affirmed that he does not believe the investigation will compromise his representation, and I overrule the government's objections, with the exception of one "objection" that I sustain as a technical matter. I thus adopt Judge Ferenbach's findings to the extent consistent with this order, and deny the motion.

## Background

Defendant Morrow and his co-defendants were jointly indicted on April 17, 2013. Doc. 1. On September 24, 2013, Morrow made his initial appearance and retained Nadig as his lawyer. Docs. 20 (minutes), 21. After his initial appearance, Morrow met with the

government and signed a non-binding plea agreement with a cooperation provision. Doc. 78 at 4. The agreement was transmitted to the court in April 2014. Doc. 78 at n.1.

After transmission of the plea agreement, Nadig discovered that he was under investigation by the government for actions he had allegedly taken while representing defendant Robert Wolfe in an unrelated criminal matter. Docs. 78 at 4; 109 at 1. It then moved to appoint Morrow new counsel in this case, claiming that Nadig's continued representation of Morrow (which includes defending Morrow during his anticipated testimony against his co-defendants) is compromised because Nadig will now have an incentive to "appease" the government by permitting Morrow to be subjected to a more comprehensive examination. Doc. 78.[1] Judge Ferenbach conducted hearings on the motion on three occasions, Docs. 97, 101, 110, and ordered supplemental briefing. *See* Docs. 106, 107, 109. The supplemental briefing included an *in camera* description of the government's ongoing investigation of Nadig. Nadig also submitted an affidavit attesting that he will be able to provide Morrow with competent representation as his role in the upcoming trial will be *de minimis* and will pertain only to the advice he provides to Morrow as a cooperating witness. Doc. 109 at 1-2. Nadig also affirms that: (1) he negotiated the plea deal on Morrow's behalf prior to learning of the investigation; (2) that he and Morrow agreed that the plea deal was the best possible deal Morrow would receive; (3) he could not envision how he could benefit from placing Morrow in a worse situation during the course of his continued representation; and (4) if he believed that his continued representation of Morrow would compromise Morrow's case, he would have filed a motion to withdraw. *Id.* Finally, on October 1, 2014, in compliance with Judge Ferenbach's order, Morrow executed a written waiver of any conflict. Doc. 107 at 6. The waiver is set out in a letter from Nadig to Morrow, acknowledges that Morrow knows that Nadig is under investigation by the Government related to the Wolfe matter, advises that Morrow should consider: (1) how the investigation could impact him; (2) whether the fact of the investigation compromised

---

[1] Like Judge Ferenbach, I assume *arguendo* that the government has standing to bring this motion without deciding the issue, as it would not alter the result.

Morrow's confidence in Nadig's representation; (3) that he could seek independent counsel to assist him in determining whether or not to consent; and (4) that he could reach out to Nadig if he had any questions. *Id.* at 6-7. Morrow executed the conflict letter acknowledging that he "consent[s] to the terms of representation set forth" in the letter. *Id.* at 7.

After reviewing this supplemental information, Judge Ferenbach concluded that Nadig's continued representation of Morrow in this case would not violate either the Nevada Rules of Professional Conduct or the Sixth Amendment, and he issued proposed findings and recommendations to that effect. Doc. 111. The government objects to Judge Ferenbach's conclusions. Doc. 122. Having carefully considered the motion de novo, I overrule the government's objections for the reasons below.

## Discussion

The district court reviews objections to a magistrate judge's proposed findings and recommendations *de novo*[2] and "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[3] Local Rule IB 3-2(b) requires *de novo* consideration of specific objections only, and the standard of review for the unobjected-to portions of the report and recommendation is left to the district judge's discretion.[4]

Nevada Rule of Professional Conduct 1.7(a) governs conflicts of interest between an attorney and his counsel and states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) The representation of one client will be directly adverse to another

---

[2] Fed. R. Crim. Proc. 59(b)(3).

[3] *Id.*

[4] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (a "district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.") (emphasis in original).

>client; or
>(2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.[5]

Nevada Rule of Professional Conduct 1.7(b) provides, however, that even if a concurrent conflict of interest exists, it can be cured if:

>(1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>(2) The representation is not prohibited by law;
>(3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>(4) Each affected client gives informed consent, confirmed in writing.[6]

Judge Ferenbach concludes that a Rule 1.7(a) conflict of interest exists because Nadig is under investigation by the same U.S. Attorney's office that is prosecuting Morrow, and under the plain language of the rule, a conflict exists even where no prosecution has occurred where there is a "significant risk" that the lawyer's representation "'will' be materially limited by a lawyer's personal interest." Doc. 111 at 3-4. That, of course, is not the end of the discussion. Both Rule 1.7(a) and the Sixth Amendment permit Morrow to waive this conflict, and Judge Ferenbach also concludes that Morrow and Nadig have satisfied Rule 1.7(a) and demonstrated that Morrow's Sixth Amendment rights are not in peril because Nadig has attested to his ability to continue to provide competent and diligent representation to Morrow, Morrow's plea and cooperation agreement were made "months before the government its investigation into" Nadig, Morrow waived the conflict, and the government has not demonstrated an actual conflict adversely affecting Nadig's performance. *Id.* at 4-5.

The government does not seriously contest Judge Ferenbach's conclusions. Instead, the government urges me to decline to honor Morrow's written waiver under the Sixth Amendment on the grounds that I am "entitled to balance the right to retain counsel, or alternatively, substitute counsel, against the interests of judicial integrity and efficiency." Doc. 122 at 2-4. According to the government, my decision should guard my obligation "to

---

[5] Nev. Rule Prof. Conduct 1.7(a).

[6] *Id.* at 1.7(b).

protect a defendant from actual conflicts of interest that the client may not fully understand or appreciate." That obligation, it contends, is triggered here because, even if the conflict arose after Morrow's April 2014 plea deal was penned, Morrow will likely testify at his co-defendants' trial and Nadig may be obligated to interact with the government's attorneys; at that time he will have new incentive to "appease" the government to the detriment of his client. *See* Doc. 122 at 3. This, in turn, will give Morrow an ineffective-assistance-of-counsel argument, which I can avoid by simply excluding Nadig from the case. *See id.* at 2-3.

But it's not that simple. True, the Sixth Amendment guarantees a criminal defendant the "right to conflict-free representation."[7] But the defendant's right to select his counsel of choice "has been regarded as the root meaning of the constitutional guarantee," the deprivation of which is a structural defect impacting "the framework within which the trial proceeds."[8] This right is violated only where an actual conflict adversely affects the lawyer's performance,[9] and requires the movant to show (1) actual representation of conflicting interests, which (2) adversely affected performance of counsel.[10] Where a conflict brought to the court's attention, the court has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."[11]

After acknowledging that no on-point precedent exists on this particular conflict question, the government offers persuasive authority from other circuits to support the proposition that a lawyer's interest is likely to diverge from that of his client when, as here, "the lawyer is being criminally investigated and/or prosecuted by the same United States

---

[7] *Daniels v. Woodford*, 428 F.3d 1181, 1196 (9th Cir. 2005).

[8] *United States v. Ganzalez-Lopez*, 548 U.S. 140, 148-49 (2006) (citations omitted).

[9] *United States v. Moore*, 159 F.3d 1154, 1157 (9th Cir. 1998).

[10] *United States v. Baker*, 256 F.3d 855, 860 (9th Cir. 2001).

[11] *Wheat v. United States*, 486 U.S. 153, 160 (1988).

1  Attorney who is criminally prosecuting his client." Doc. 122 at 3.[12]  I find these cases
2  distinguishable because, in each, the presence of a conflict was either not timely disclosed to
3  the defendant or not critical to the court's holding.  In this case, by contrast, Judge Ferenbach
4  conducted several hearings on the motion to withdraw and ordered supplemental briefing to
5  ascertain: (1) the extent of the government's investigation into Nadig's alleged activities; (2)
6  whether and to what extent Morrow had been advised of the potential conflict and waived it;
7  and (3) whether Nadig has a good-faith belief he can and will continue his representation
8  without sacrificing the integrity of Morrow's representation.

9        Having thoroughly considered Judge Ferenbach's carefully developed record that
10 illustrates, *inter alia*, that Morrow is fully advised of this pretrial conflict and has knowingly,
11 voluntarily, and intelligently waived it and that Nadig believes he can continue to represent
12 Morrow effectively; and that Nadig's role in Morrow's continued representation will be *de*
13 *minimis*, I agree that Sixth Amendment concerns will not bar Morrow from continuing to be
14 represented by the counsel of his choice, even if Nadig must interact with government
15 attorneys when Morrow testifies at his co-defendants' trial.  For the same reasons, Nadig's
16 continued representation of Morrow will not undermine the public's faith in the judicial
17 process nor support an ineffective-assistance-of-counsel claim because there is a clear and
18 comprehensive record that Morrow has waived any potential conflict and Nadig's continued
19 representation will not compromise Morrow's rights.  Against the weight of this evidence, I
20 find the government's trial-related hypotheticals to be speculative and unpersuasive.

21       In a footnote of its objection, the government also appears to object to Judge
22 Ferenbach's finding that any danger of cross-examination can be mitigated at trial by the
23 exclusion of evidence under Federal Rule of Evidence 403.  Doc. 122 at 4 n.4 (citing Doc.
24 111 at 8).  The government contends that since no specific objection or motion in limine
25 regarding any potential cross-examination of Morrow has been raised or made, Judge

---

[12] The government cites *Armienti v. United States*, 234 F.3d 820, 824-25 (2d Cir. 2000); *Briguglio v. United States*, 675 F.2d 81, 82 (3d Cir. 1982); *Thompkins v. Cohen*, 965 F.2d 330, 332 (7th Cir. 1992); and *United States v. McLain*, 823 F.2d 1457, 1463-64 (11th Cir. 1987).

Ferenbach should not have "*sua sponte* granted a motion in limine precluding Morrow's co-defendants from cross-examining Morrow on this issue." *Id.* at 4. I note that in its original motion to disqualify Nadig, the government argued that "Mr. Nadig's continued representation of Morrow may open the door to questions on cross-examination regarding Morrow's motive for testifying." Doc. 104 at 4. Thus, at the time, it was reasonable for Judge Ferenbach to respond to this argument with a discussion of the evidentiary implications of permitting Nadig to retain Morrow as his counsel. Nevertheless, because the government appears to be retracting this particular argument regarding the implications of Nadig's representation—presumably so it can raise the issue in a specific *in limine* motion closer to the time of trial—I need not address the merits of their "objection" to Judge Ferenbach's *in limine* ruling. But as a purely technical matter, I sustain the government's "objection" for the sole purpose of clarifying that the government may raise this issue closer to the time of trial, or at trial, and I reserve any adoption of that recommendation for another day.

## Conclusion

Accordingly, based on the foregoing reasons, and with good cause appearing and no reason for delay,

**IT IS HEREBY ORDERED** that the Government's Objections to Magistrate Judge Ferenbach's Report & Recommendation **[Doc. 122] are OVERRULED and SUSTAINED** as set forth in this Order;

**IT IS FURTHER ORDERED** that Magistrate Judge Ferenbach's Report and Recommendation **[Doc. 111] is ADOPTED** to the extent consistent with this Order;

**It is FURTHER ORDERED** that the Government's Motion for Appointment of Counsel **[Doc. 78] is DENIED.**

DATED: November 12, 2014.

_____
Jennifer A. Dorsey
United States District Judge